IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Jayniece K. Sturdevant, | ) | C/A No. 0:13-3582-DCN-PJG |
|     Plaintiff, | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| Carolyn W. Colvin, Acting Commissioner of Social Security, | ) | |
|     Defendant. | ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 (D.S.C.). The plaintiff, Jayniece K. Sturdevant, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Having carefully considered the parties' submissions[1] and the applicable law, the court concludes that the Commissioner's decision should be remanded for further consideration as explained below.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has

---

[1] The court observes that plaintiff's brief does not comply with the format requirements for filed documents found in Local Civil Rule 1.05 (D.S.C.) or the judges' filing preferences. See Standard Preference 6, http://www.scd.uscourts.gov/CMECF/preferences.asp (last visited Feb. 3, 2015). Plaintiff's counsel is reminded that all future filings should comply with these requirements.

Page 1 of 11



lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a "severe" impairment;

(3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4) whether the claimant can perform her past relevant work; and

(5) whether the claimant's impairments prevent her from doing any other kind of work.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[2] If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by

---

[2] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances. 20 C.F.R. §§ 404.1520(h), 416.920(h).



obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## ADMINISTRATIVE PROCEEDINGS

In February 2011, Sturdevant applied for DIB and SSI, alleging disability beginning May 15, 2010. Sturdevant's applications were denied initially and upon reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on June 4, 2012, at which Sturdevant, who was represented by James Callahan, Esquire, appeared and testified. After hearing testimony from a vocational expert, the ALJ issued a decision on July 3, 2012 concluding that Sturdevant was not disabled. (Tr. 15-23.)

Sturdevant was born in 1957 and was fifty-two years old at the time of her alleged disability onset date. (Tr. 214.) She has passed a General Educational Development ("GED") test and has past relevant work experience as a waitress and a garment inspector. (Tr. 240-41.) Sturdevant alleged disability due to back and leg pains and high blood pressure. (Tr. 240.)

In applying the five-step sequential process, the ALJ found that Sturdevant had not engaged in substantial gainful activity since May 15, 2010—her alleged onset date. The ALJ also determined that Sturdevant's degenerative disc disease was a severe impairment. However, the ALJ found that Sturdevant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). The ALJ further found that Sturdevant retained the residual functional capacity to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she cannot climb ladders, ropes, or scaffolds and can occasionally perform the other postural movements (climbing ramps/stairs, balancing, stooping, kneeling, crouching and crawling).



(Tr. 19.) The ALJ found that Sturdevant was capable of performing past relevant work as a waitress, hostess, and garment inspector, and that this work did not require the performance of work-related activities precluded by Sturdevant's residual functional capacity. Therefore, the ALJ found that Sturdevant was not disabled from May 15, 2010 through the date of his decision.

The Appeals Council denied Sturdevant's request for review on October 21, 2013 making the decision of the ALJ the final action of the Commissioner. (Tr. 1-3.) This action followed.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.



## ISSUES

Sturdevant raises the following issues for this judicial review:

I. It was error for the [ALJ] to give no weight to the multiple opinions of Plaintiff's treating medical Providers.

II. The ALJ failed to find that Plaintiff's right hand impairment, chronic Hepatitis B, and depression with anxiety were "severe impairments."

III. It was error for the ALJ to promulgate an incomplete "residual functional capacity" (RFC) that improperly failed to accommodate all of plaintiff's limitations supported by the evidence.

IV. The ALJ improperly discounted the Plaintiff's testimony and credibility, for reasons contrary to the agency's regulations, not supported by the substantial evidence, and not related to the ability to sustain work.

V. The vocational expert's testimony does not constitute substantial evidence, as it is at[] least partially inconsistent with the ALJ's own RFC, and in its entirety is based on a faulty and incomplete residual functional capacity.

(Pl.'s Br., ECF No. 15.)

## DISCUSSION

Sturdevant presents several issues on appeal. For the reasons that follow, the court agrees that the ALJ's determination at Step Two of the sequential process is unsupported by substantial evidence, which impacts the remaining steps of the sequential process. Therefore, the court addresses this issue first.

Step Two of the sequential evaluation requires the ALJ to "consider the medical severity of [a claimant's] impairment(s)." 20 C.F.R. §§ 404.1520(a)(4(ii), 416.920(a)(4)(ii). The claimant bears the burden at this step to show that he has a severe impairment. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). A severe impairment is one that "significantly limits [a claimant's] physical



or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" means "the abilities and aptitudes necessary to do most jobs." Examples of these include:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
(2) Capacities for seeing, hearing, and speaking;
(3) Understanding, carrying out, and remembering simple instructions;
(4) Use of judgment;
(5) Responding appropriately to supervision, co-workers and usual work situations; and
(6) Dealing with changes in a routine work setting.

20 C.F.R. §§ 404.1521(b), 416.921(b). "[A]n impairment can be considered as not severe only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (emphasis in original) (internal quotation marks omitted).

At Step Two, the ALJ found that Sturdevant's degenerative disc disease constituted a severe impairment. The ALJ also considered Sturdevant's chronic hepatitis B, hypertension, chronic obstructive pulmonary disease, obstructive sleep apnea, and affective disorder and found them to be non-severe. Sturdevant argues that the ALJ erred failing to consider her right (dominant) hand impairment and in failing to find that this impairment constituted a "severe" impairment.[3]

---

[3] Sturdevant also argues that the ALJ erred in determining that her chronic hepatitis B and depression and anxiety constituted "non-severe" impairments. With regard to her chronic hepatitis B, Sturdevant generally argues that this condition can cause many of the symptoms that she reported, including joint pain, headaches, and fatigue. With regard to her depression and anxiety, Sturdevant relies on her arguments in support of her position that the ALJ erred in evaluating her credibility. However, as explained below, the court need not reach the credibility issue as it may be rendered moot on remand. Therefore, the court similarly finds that these arguments may be rendered moot on remand and that Sturdevant may present these arguments, if necessary, to the ALJ.



In finding that Sturdevant's chronic hepatitis B and hypertension were non-severe impairments, the ALJ found that "the medical evidence of record does not reveal any significant work-related limitations caused by either condition." (Tr. 18.) With regard to her chronic obstructive pulmonary disease, the ALJ found that this condition was not mentioned at the hearing and that there was no evidence that this condition or her obstructive sleep apnea caused any work-related limitation. Further, in determining that her affective disorder "does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities," the ALJ discussed the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1), which are known as the "paragraph B" criteria. (Id.) Specifically, the ALJ found that Sturdevant has no limitation in activities of daily living; mild limitation in social functioning, and in concentration, persistence, or pace; and no episodes of decompensation. The ALJ did not discuss Sturdevant's right hand impairment.

In support of her allegations of error with regard to her hand impairment, Sturdevant points out that in July 2010 she reported to Dr. Faye Hant, a rheumatologist at MUSC, a history of pain in her hand joints, especially her finger joints and that for the last the three weeks, she had numbness in her fourth and fifth fingers. (Tr. 458.) Sturdevant also argues that Dr. Hant "elicited a positive Tinel's sign at the right elbow which reproduces numbness and tingling into the 4th and 5th digits." (Pl.'s Br. at 23, ECF No. 15 at 23) (citing Tr. 460). Dr. Hant indicated that she believed the tingling in Sturdevant's right arm was due to ulnar entrapment, which was consistent with her examination findings. (Tr. 461.) Further, Sturdevant points out that in October 2010, Dr. Hant's records indicate reports of a constant numbness in the right fourth and fifth digits, and Dr. Hant assessed right upper



extremity fourth and fifth digit numbness, suggestive for ulnar neuropathy. (Tr. 451, 454.) Dr. Hant referred Sturdevant for a EMG/nerve conduction study at MUSC, which included findings of increased insertional activity in the right hand suggestive of mild ulnar neuropathy, a suggestion of peripheral neuropathy, and a possible but less likely suggestion of cervical radiculopathy. (Tr. 465-66.) Sturdevant also argues that in November 2010, Dr. Hant again diagnosed right upper extremity fourth and fifth digit numbness, suggestive for ulnar neuropathy and confirmed on EMG/nerve condiction study as a mild process, and discussed referring Sturdevant to a hand surgeon, but Sturdevant indicated she would like to speak with her primary care physician. (Tr. 439.) Finally, Sturdevant argues that her testimony during the hearing before the ALJ revealed that she is right-handed, that her right hand will get numb and her fingers will draw up, that she can only use a computer for about ten minutes due to hand pain, and that she tends to drop items. (Tr. 35, 48.)

As argued by Sturdevant, the ALJ did not discuss this alleged impairment at Step Two of the sequential process. Moreover, the only mention of issues with Sturdevant's right hand in the ALJ's opinion is first in summarizing her testimony a statement that "she had problems with numbness in her right hand." (Tr. 20.) The ALJ also mentioned that Sturdevant "had some numbness and tingling to the right 4th and 5th digits of her right hand" as one of the pieces of medical evidence in support of his decision to limit Sturdevant to "the performance of light work with a limitation from climbing ladders, ropes or scaffolds and occasional performance of the other postural movements." (Tr. 22.) However, the ALJ offers no explanation or analysis as to whether he considered the possibility that Sturdevant's alleged right hand impairment could limit her physical ability to do basic work activities and is more than a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective



of age, education, or work experience." Evans, 734 F.2d at 1014 (emphasis deleted); see also 20 C.F.R. §§ 404.1520(c), 416.920(c).

The court finds that all of this evidence discussed by Sturdevant arguably demonstrates that her right hand impairment may meet this standard and arguably could cause additional limitations in her residual functional capacity. However, as stated above, the ALJ's opinion fails to reflect that he considered possible limitations stemming from this alleged impairment in finding that she could perform light work. (Cf. Tr. 67-68) (testimony from the vocational expert explaining that none of the jobs he had identified could be performed because they all require "good use of both hands on a frequent to constant basis" and stating that "if use of either upper extremity and hand, particularly the dominant one, is limited to occasional or less, that person would not reasonably be capable of performing any of the unskilled light or sedentary jobs that exist"). Accordingly, it is unclear whether the ALJ overlooked this alleged impairment or whether he considered this impairment and found that it did not limit Sturdevant's ability to do basic work activities. Moreover, contrary to the Commissioner's arguments, the court cannot find that this error is harmless or irrelevant simply because the ALJ made the two brief references to Sturdevant's right hand indicated above. Cf. Washington v. Astrue, 698 F. Supp. 2d 562, 580 (D.S.C. 2010) (adopting Report and Recommendation that included a collection of cases and finding "no reversible error where the ALJ does not find an impairment severe at step two provided that he or she considers that impairment in subsequent steps"). As a result, the court cannot say that the ALJ's conclusion in this regard is supported by substantial evidence. Therefore, the court is constrained to recommend remanding this matter for further consideration of Sturdevant's alleged right hand impairment at Step Two and its impact on the remaining sequential process.

PJG

In light of the court's finding that this matter should be remanded for further consideration, the court need not address Sturdevant's remaining issues, as they may be rendered moot on remand. See Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments).  Moreover, if necessary, Sturdevant may present her additional arguments on remand, such as her arguments regarding her credibility and the ALJ's evaluation of the opinion evidence, which may impact the ALJ's treatment of her other impairments, the residual functional capacity assessment, and the hypothetical questions to the vocational expert.

## RECOMMENDATION

Based on the foregoing, the court recommends that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be remanded to the Commissioner for further consideration as discussed above.

February 3, 2015  
Columbia, South Carolina

Paige J. Gossett  
UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).